Powell *v.* Mayo.

POWELL *vs.* MAYO and others.

1. In the trial of an issue directed under a bill filed to quiet title, to inquire and determine whether the defendant had any such estate or interest in the property as was claimed by him, the defendant is bound by the title set up in his answer; and if he then claims under a title substantially different, and objection is made, a new trial will be granted as a matter of course, if the verdict be in his favor.

2. It may also be cause for granting a new trial, if the complainant is, on the trial of the issue, surprised by the claim of the defendant to title under an instrument, or from a source, not stated or referred to in the answer.

3. But if there be no objection to the production of the evidence, or to the claim, at the trial, and there is no allegation of surprise, there would seem to be no good reason for ordering a new trial merely because the title proved, differs, though it may be radically, from that set up in the answer.

4. Where a different title is established in favor of the defendant, at the trial, from that set up in his answer, if no objection was made at the trial, and no surprise is alleged, and it appears that justice will be done by establishing the title proved at the trial, it is competent for this court to direct an amendment of the answer, if necessary, to conform to the finding of the jury. The court is not restricted to a decree in favor of or against the title set up in the answer.

5. A new trial was ordered, because the verdict was clearly against the weight of evidence.

On bill filed under the act ." to compel the determination of claims to real estate in certain cases, and to quiet the title to the same," and answer thereto. Motion for new trial.

*Mr. William J. Magie, Mr. Cortlandt Parker,* and *Mr. B. Williamson,* for the motion.

*Mr. H. Richards,* contra.

THE CHANCELLOR.

The complainant, being in peaceable possession of, and claiming to own certain land in the city of Elizabeth, in this state, and his title thereto being disputed, filed his bill under the act "to compel the determination of claims to real estate in certain cases, and to quiet the title to the same," approved March 2d, 1870. *Pamph. Laws* 1870, *p.* 20. The defendants answered, setting up a title to part of the premises, under John De Hart, senior, who, at his death, which occurred in 1794, was the owner of the property. By his will, he gave his executors, who were his sons, Jacob, John and Matthias, power to sell land, including the premises in question, and directed that the proceeds be divided equally among his eight children, John, Jacob, Matthias, Stephen, Richard, Sarah, Abigail, Jane, and Louisa. The answer alleges that Richard died soon after his father's death, intestate, unmarried and without issue, and without having disposed of his interest in the property; that Matthias died about 1826, unmarried and without issue, and without having disposed of his interest in his lifetime, but leaving a will by which he gave all his estate to his sisters, Sarah and Jane; that Jacob died about the 15th of August, 1832, intestate, leaving four children, John, Juliet, Louisa and Gideon, his heirs-at-law; that Stephen died many years ago, leaving a son, who was reported to be dead previous to 1830, intestate and without issue; that Sarah died on or about the 17th of August, 1832, unmarried and without issue, and without having disposed of her interest in her lifetime, but leaving a will by which she gave her estate to her sister Jane and her brother Matthias; that the interest given to Matthias, under that will, lapsed, by reason of his death before the death of the testatrix, and that, therefore, the interest in the testatrix's estate, devised to him, went to the heirs-at-law of the testatrix, and also that the will, having been executed before the testatrix became the owner of the share of Matthias' estate, devised to her by his will, she died intestate as to that part of her estate, and that it went to

her heirs-at-law, accordingly. It may be observed that it is apparent, from the will of John DeHart, senior, that he had a son named Stephen Richard, instead of a son named Stephen and another named Richard, as stated in the answer. The answer further states that Abigail Mayo, one of the daughters of John DeHart, senior, died about 1843, intestate, according to the laws of this state, leaving a son and two daughters, Edward C., Maria and Julia, and not having disposed of her interest in the property in question ; that John De Hart, junior, one of the executors of John DeHart, senior, died on or about the 26th of January, 1846, without having disposed of his interest in the premises, and that, although he left a will, his interest did not pass under it ; that Jane DeHart, one of the devisees under the will of John DeHart, senior, died on or about February 21st, 1847, unmarried and without issue, and without having disposed of her interest in the property ; that by her will she gave her estate to her niece, Louisa DeHart, but the answer alleges that Jane died intestate of the interest in the premises in question, which she inherited from her brother John, because she had not yet acquired it at the time of making her will, and that, therefore, that interest passed to her heirs-at-law.

The answer sets up the title of the defendants through these sources. The defendants are, the widow of Edward C. Mayo, deceased, and his children, with the wives of the sons and the husband of the married daughter, and the daughters of Maria, (who was the wife of the late General Winfield Scott, and was one of the daughters of Abigail Mayo,) and the husbands of such of them as are now married. The defendants claim, by the answer, to own seven hundred and ninety-eight undivided four thousand four hundred and tenth parts of the property. As to the rest, they disclaim ownership.

The act under which the bill was filed, provides that when any person is in peaceable possession of lands in this state, claiming to own the same, and his title thereto or to any part thereof, is denied or disputed, or any other person claims, or

is claimed to own the same or any part thereof, or any interest therein, or to hold any lien or encumbrance thereon, and no suit shall be pending to enforce or test the validity of such title, claim or encumbrance, it shall be lawful for such person so in possession, to bring and maintain a suit in this court, to settle the title of the lands and to clear up all doubts and disputes concerning the same; that the bill of complaint in such suit shall describe the lands with certainty, and shall name the person who claims or is claimed or reputed to have such title or interest in or encumbrance on the lands, and shall call upon such person to set forth and specify his title, claim or encumbrance, and how and by what instrument the same is derived or created. It further provides, that if any defendant shall answer, claiming any estate or interest in or encumbrance on the lands or any part thereof, he shall, in such answer, specify and set forth the estate, interest or encumbrance so claimed, and if not claimed in or upon the whole of the lands, he shall specify and describe the part in or upon which the same is claimed, and shall set out the manner in which, and the sources through which, such title or encumbrance is claimed to be derived. The act further provides that, upon application of either party, an issue at law shall be directed to try the validity of such claim or to settle the facts, or any specified portion of the facts, upon which the same depends, and that this court shall be bound by the result of such issue, but may, for sufficient reasons, order a new trial thereof, according to the practice in such cases; and when such issue is not requested, or as to the facts for which the same is not requested, this court shall proceed to inquire into and determine such claims, interest and estate, according to the course and practice of this court, and shall, upon the finding of such issue, or upon such inquiry and determination, finally settle and adjudge whether the defendant has any estate, interest, or right in, or encumbrance upon the lands or any part thereof, and what such interest, estate, right, or encumbrance is, or upon what part of the lands the same exists. The final determination and decree in the suit are to

fix and settle the rights of the parties in the lands, and are to be binding and conclusive on all parties to the suit. The act and its supplement (*Pamph. L.*, 1870, *p.* 40,) provide for the protection of the rights of persons under disability.

In this case, an issue was directed to inquire, ascertain and determine whether, at the date of the decree awarding the issue, the defendants had any such estate or interest in the property as was claimed by them. The issue was tried before the Honorable David A. Depue, one of the Justices of the Supreme Court, in the Union Circuit, at the Term of September, 1874, and resulted in a verdict in favor of the defendants for one sixth of the premises, excluding a triangular piece, as to which the defendants, at the trial, disclaimed ownership. Motion is now made for a new trial.

On the trial, the defendants put in evidence a deed for the premises in dispute, from John DeHart, junior, as surviving executor of John DeHart, senior, to James B. Clark, dated July 16th, 1835, and purporting to convey the premises in fee simple, for the consideration of $3360.80, and to be made in pursuance of the power of sale in the will of John De Hart, senior. They also put in evidence a deed from James B. Clark and wife to John DeHart, junior, for the property, in fee simple, for the consideration of $1000, and dated on the 4th of February, 1842. They claimed title under these deeds, although they did not expressly abandon their claim to the title as set up in the answer. They suggested, but did not prove, nor did they offer any evidence to that end, that these deeds were fraudulent, and merely intended as a means by which John DeHart, junior, might get title for the premises. Their position was, that the power of sale under the will of John DeHart, senior, had not been executed, but still they insisted, that on the hypothesis that these deeds gave title to John DeHart, junior, their claim to the property was valid under them. But the claim under the deed to Clark was inconsistent with the title claimed in the answer, and in introducing the former on the trial they practically abandoned the latter, for the conveyance to Clark, standing

unimpeached as it did, was, as to the premises in question, an execution of the power of sale under the will of John De Hart, senior, and, therefore, put an end to any tenancy in common which might theretofore have existed between the heirs of John DeHart, senior, in that property. From the time of the introduction of that deed on the trial, the defendants were confined to their claim of title under it. No objection was made to the receipt of the deed from John DeHart, junior, to Clark, and the deed from the latter to the former, in evidence. It was the complainant's right, however, under the circumstances, had he seen fit to claim it, to have them excluded if relied on, as they were, by the defendants, as sources of title. The answer did not set up such title, nor claim title derived in any way through those deeds, or either of them. The defendant, in such a case as this, is bound, in the trial of the issue, by the title he sets up in his answer, and if he then claims under a title substantially different, and objection is made, a new trial will be granted, as a matter of course, if the verdict be in his favor. It may also be cause for granting a new trial if the complainant is, on the trial of the issue, surprised by the claim of the defendant to title, under an instrument, or from a source not stated or referred to in the answer. But if there be no objection to the production of the evidence, or to the claim, at the trial, and there is no allegation of surprise, there seems to be no good reason for ordering a new trial, merely because the title proved differs, though it may be, radically, from that set up in the answer. This court is required to " finally settle and adjudge, whether the defendant has any estate, interest or right in, or encumbrance upon, the lands, or any part thereof, and what such interest, estate, right or encumbrance is, and in, or upon what part of the lands, the same exists." It is objected, that this court can only decree in favor of or against the title set up in the answer, and, therefore, if a different title be established in favor of the defendant, at the trial, this court can make no decree. But, in such a case, where no objection is made at the trial, and no surprise alleged, and it

appears that justice will be done by establishing the title proved at the trial, it would be competent for this court to direct an amendment of the answer, if necessary, to conform to the finding of the jury. Such amendment could, under such circumstances, only be necessary for the sake of conformity.

In this case I. find, for the reasons I have given, no ground for a new trial on the ground of mistrial. The verdict, however, appears to me to be clearly against the weight of evidence. The complainant claimed that the power of sale, under the will of John DeHart, senior, was executed by a sale which took place in October, 1799, at which the real estate of the testator, subject to be sold under the power, was sold by his executors at public auction, and that at that sale the property in question in this suit was struck off and sold to the Chevalier D'Anteroches, then a neighbor and friend of the family, in trust for Jane, Sarah, Jacob and Matthias, four of the children of the testator; that D'Anteroches soon afterwards returned to France, and died there, and that whether he ever executed any deed to those whom he represented in the purchase, could not be ascertained, nor whether any was ever executed to him. The complainant claimed that this sale was in execution of the power, and was, in fact, a partition of the real estate subject to it, among the children of the testator, who were entitled to the proceeds of the sale thereof, and he insisted that, conceding that no conveyance was made to D'Anteroches, yet the circumstantial evidence of such sale is cogent and sufficient, and that the partition ought to be upheld as a parol partition long acquiesced in by all parties in interest, and followed by possession of the parties to whom the land was assigned in such partition. He claimed that Jane had been in possession of the premises, by virtue of such partition, ever since the sale, or about that time; that Jane and Sarah, soon after the sale, acquired the title of Jacob and Matthias to the property, and that on the death of Sarah, in 1832, Jane became, by devise, the owner of Sarah's interest, and, therefore, sole owner of the premises.

The jury were instructed, that there could be no recovery on that claim of title. I do not deem it necessary to consider it now. The complainant also claimed title, by virtue of adverse possession in Jane and those claiming under her, from the year 1835, at least. This title was submitted to the consideration of the jury, and they found against it. As to the identity of the property with that which was occupied by Christy and Condell, who, consecutively, occupied under Jane, as her tenants, from 1833 to 1851, there appears to be no reasonable doubt. Indeed, there appears to have been no question raised on this score at the trial. The weight of the evidence is, very decidedly, in favor of adverse possession by Jane De Hart and those claiming under her, at least, from the year 1835, the date of the filing of her bill in this court against Clark and others, in which she set up a claim to the property of a date long antecedent to the filing of her bill, and alleged that she and her sister Sarah, whose interest she then claimed to own, had been in possession for thirty-five years before the sale to Clark. To this bill, setting up exclusive title and ownership, John De Hart, James B. Clark, John W. Patterson and Louisa, (one of the daughters of John DeHart, senior,) his wife, and Abigail Mayo, were defendants. As against Mrs. Mayo, the bill was taken as confessed. She, and those claiming under her, were, and are, bound by that decree, and the admission which it implies. Clark, under whom the defendants claim, admits in his answer to the bill, that before he took title to the property, Jane, on his applying to her while he was in negotiation for the land, informed him that she was in possession, and claimed title by possession; Jane, and those claiming under her, are shown to have been in possession ever since that time. Clark's deed is dated July 16th, 1835. The possession, after the conveyance to Clark, must have been adverse. From that time, the possession which Jane, and those claiming under her, had, could not have been that of a tenant in common, for there could have been no tenancy in common after that time. The conveyance to Clark was a severance, and destroyed the community of

interest of the heirs of John DeHart, senior; in the property, if it indeed existed up to that time. And if it was then destroyed, the possession of Jane, and those claiming under her, must have been adverse from the date of that conveyance, which is a period antecedent to the death of John De Hart, junior.

There would appear, therefore, to have been adverse possession, commencing prior to the death of John DeHart, junior, which took place on the 26th of January, 1846, and if so, the complainant was entitled to the verdict of the jury in his favor, for, in that case, the statute of limitations ran over all subsequent disabilities. And, although Mrs. Mayo died in 1843, and two of her children, Mrs. Scott and Mrs. Cabell, were then married women, yet the statute ran as against them, notwithstanding their coverture, for the title was then in John DeHart, junior, under whom they claim, and so continued, until his death in 1846.

A new trial will be ordered.